**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DEMETRICK PENNIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-01945-E |
| | § | |
| THE DALLAS MORNING NEWS, INC., | § | |
| NAOMI MARTIN, ARIANA GIORGI, | § | |
| MAYES MEDIA GROUP, BRIAN | § | |
| MAYES, DALLAS POLICE | § | |
| ASSOCIATION, MICHAEL MATA, | § | |
| THOMAS POPKEN, DALLAS POLICE | § | |
| ASSOCIATION'S ASSIST THE OFFICER | § | |
| FOUNDATION, INC., FREDERICK | § | |
| FRAZIER, JOHN BURK, CITY OF | § | |
| DALLAS, AND MIKE RAWLINGS | § | |
| | § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF DEFENDANTS THE DALLAS MORNING NEWS, INC. AND NAOMI MARTIN'S MOTION TO DISMISS**

Pursuant to Local Rule 7.1(d), Defendants The Dallas Morning News, Inc. ("TDMN") and Naomi Martin (collectively the "News Defendants") submit the following Brief in support of their Motion to Dismiss.

Respectfully submitted,

By: */s/ Paul C. Watler*
Paul C. Watler
State Bar No. 20931600
pwatler@jw.com
Shannon Zmud Teicher
State Bar No. 24047169
steicher@jw.com
Eric D. Wong
State Bar No. 24102659
ewong@jw.com
**JACKSON WALKER LLP**
2323 Ross Ave., Suite 600

Dallas, Texas 75201
Phone:  (214) 953-6000
Fax:  (214) 953-5822

**ATTORNEYS FOR DEFENDANTS THE DALLAS MORNING NEWS, INC. AND NAOMI MARTIN.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the following has been served upon all parties and counsel registered to use the Court's ECF system, in accordance with Federal Rule of Civil Procedure 5(b)(2)(e) and Local Rule 5.1(d).

/s/ *Eric D. Wong*
Eric D. Wong

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. iii

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................1

I.      Factual allegations pertaining to the Federal Claims. ......................................2

II.     Factual allegations pertaining to the Defamation Claims. ................................3

III.    Pennie's causes of action. .................................................................................4

STANDARD OF REVIEW ...........................................................................................4

ARGUMENT .................................................................................................................5

I.      The Court lacks subject matter jurisdiction over Pennie's claims against the News
        Defendants. .......................................................................................................6

        A.      The Complaint presents no federal question to support original jurisdiction
                over Pennie's claims against the News Defendants................................6

        B.      Pennie's claims against the News Defendants arise out of a different case
                and controversy than the Federal Claims................................................7

        C.      The Complaint fails to state a viable federal claim, removing any basis for
                supplemental jurisdiction over Pennie's claims against the News
                Defendants. ...........................................................................................10

II.     Pennie's Defamation Claims against the News Defendants are barred by the
        statute of limitations.........................................................................................11

III.    Plaintiff fails to state a plausible claim for relief against the News Defendants. ..............16

        A.      Legal standard.......................................................................................16

        B.      Pennie is a public official required to prove actual malice. ..................17

        C.      Pennie fails to plausibly allege actual malice. ......................................18

CONCLUSION............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
 973 F. Supp. 2d 467 (S.D.N.Y. 2013).....................................................................................20

*Akins v. Liberty Cty.*,
 No. 1:10-CV-328, 2010 WL 11552952 (E.D. Tex. Dec. 13, 2010) .........................................9

*Am. Dental Ass'n v. Cigna Corp.*,
 605 F.3d 1283 (11th Cir. 2010) ..............................................................................................5

*Andrade v. Teichroeb*,
 341 F. Supp. 3d 681 (N.D. Tex. 2018) ....................................................................................5

*Arpaio v. Cottle*,
 No. 18-cv-2387, 2019 WL 3767104 (D.D.C. Aug. 9, 2019).................................................23

*Barlow v. Wal-Mart Stores, Inc.*,
 215 F. App'x 317 (5th Cir. 2006) ...................................................................................13, 15

*Barnes v. Borough of Pottstown*,
 No. Civ. A. 93-1498, 1993 WL 239314 (E.D. Pa. June 30, 1993) ...........................................9

*Beck v. Lone Star Broad., Co.*,
 970 S.W.2d 610 (Tex. App.—Tyler 1998, pet. denied)..........................................................23

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................................5, 20

*Bennett v. Calabrian Chems. Corp.*,
 324 F. Supp. 815 (E.D. Tex. 2004) ..........................................................................................6

*Biro v. Conde Nast*,
 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ............................16

*Brackens v. City of Ennis*,
 No. Civ.A.3:97-CV-2502-H, 1998 WL 101938 (N.D. Tex. Mar. 2, 1998)............................11

*Broom v. MacMaster*,
 992 S.W.2d 659 (Tex. App.—Dallas 1999, no pet.).........................................................14, 15

*Busch v. Viacom Int'l, Inc.*,
 477 F. Supp. 2d 764 (N.D. Tex. 2007) ..................................................................................17

*Chevalier v. Animal Rehab. Center, Inc.*,
    839 F. Supp. 1224 (N.D. Tex. 1993) ...................................................................12

*Chhim v. Univ. of Tex. at Austin*,
    836 F.3d 467 (5th Cir. 2016) ...............................................................................5

*Comb v. Benji's Special Educ. Acad.*,
    No. H-10-3498, 2011 WL 4074575 (S.D. Tex. Sept. 13, 2011)..............................9

*Cox Tex. Newspapers, LP v. Penick*,
    219 S.W.3d 425 (Tex. App.—Austin 2007, pet. denied).......................................19

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017), *appeal dismissed*, No. 17-7164, 2017 WL
    6553388 (D.C. Cir. Dec. 8, 2017)..........................................................................22

*Dolcefino v. Turner*,
    987 S.W.2d 100 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom.*,
    *Turner v. KTRK Telev., Inc.*, 38 S.W.3d 103 (Tex. 2000) ......................................21

*Enochs v. Lampasas Cty.*,
    641 F.3d 155 (5th Cir. 2011) ...............................................................................10

*Epie v. Bd. of Pardons & Paroles*,
    No. 3:8-CV-1258-D, 2009 WL 2474050 (N.D. Tex. Aug. 12, 2009) ..............10, 11

*Farmers Tex. Cty. Mut. Ins. Co. v. McAbee*,
    No. 05-18-00735-CV, 2019 WL 1468037 (Tex. App.—Dallas Apr. 3, 2019,
    no pet. h.) ...........................................................................................................14

*Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*,
    753 F.2d 444 (5th Cir. 1985) ...............................................................................12

*Freedom Newspapers of Tex v. Cantu*,
    168 S.W.3d 847 (Tex. 2005)................................................................................21

*Garcia v. Simeus Foods Int'l, Inc.*,
    No. 3:08-cv-01137-M, 2009 WL 2448437 (N.D. Tex. Aug. 7, 2009) .......12, 13, 14

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)..........................................................................................18, 20

*Garza v. Citizens State Bank*,
    No. 6:08-CV-008-C, 2008 WL 11347435 (N.D. Tex. Oct. 2, 2008).....................12

*Greer v. Abraham*,
    489 S.W.3d 440 (Tex. 2016)......................................................................17, 18, 19

*Griener v. United States*,
  900 F.3d 700 (5th Cir. 2018) .........................................................................4

*Hailey v. KTBS, Inc.*,
  935 S.W.2d 857 (Tex. App.—Texarkana 1996, no writ) ......................................17

*Hall v. Hodgkins*,
  305 F. App'x 224 (5th Cir. 2008) .....................................................................13

*Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*,
  543 F.3d 221 (5th Cir. 2008) .........................................................................10

*Hanks v. Shinseki*,
  No. 3:08-CV-1594-G, 2009 WL 2002917 (N.D. Tex. July 9, 2009).......................10

*Harper v. Kroger Tex., L.P.*,
  No. 4:17-cv-00195-O, 2017 WL 2991472 (N.D. Tex. July 14, 2017) .......................12, 13, 14

*Hearst Corp. v. Skeen*,
  159 S.W.3d 633 (Tex. 2005)...........................................................................19

*Herman v. Quorum*,
  No. 05-01-01607-CV, 2002 WL 1895511 (Tex. App.—Dallas Aug. 19, 2002,
  no pet.) ...................................................................................................15

*Huckabee v. Time Waner Ent'mt Co.*,
  19 S.W.3d 413, 427 (Tex. 2000)...............................................................20, 21, 22

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)................................................................18

*Juarez v. Aguilar*,
  666 F.3d 325 (5th Cir. 2011) ..........................................................................10

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) ........................................................................16

*Kallie v. Tex. Dept. of Family & Protective Servs.*,
  No. A-13-CV-740-SS, 2013 WL 12393921 (W.D. Tex. Oct. 4, 2013)......................7

*Levine v. CMP Publ'ns, Inc.*,
  739 F.2d 660 (5th Cir. 1984) ..........................................................................12

*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003).......................................................................21

*McKinley v. Baden*,
  777 F.2d 1017 (5th Cir. 1985) ........................................................................17

*Meyers v. Textron, Inc.*,
   540 F. App'x 408 (5th Cir. 2013) ...........................................................17

*Montes v. Villarreal*,
   281 S.W.3d 552 (Tex. App.—El Paso 2008, pet. denied) .........................15

*Morris v. Dallas Morning News, Inc.*,
   934 S.W.2d 410 (Tex. App.—Waco 1996, writ den.) ..............................17

*Muthukumar v. Kiel*,
   478 F. App'x 156 (5th Cir. 2012) ...........................................................11

*Nationwide Bi-Weekly Admin. v. Belo Corp.*,
   No. 3:06-CV-0600-N, 2006 WL 8436934 (N.D. Tex. Oct. 16, 2006), *aff'd* 512
   F.3d 137 (5th Cir. 2007) ........................................................................12

*Nationwide v. Belo Corp.*,
   512 F.3d 137 (5th Cir. 2007) ..............................................................5, 13

*New Times, Inc. v. Isaacks*,
   146 S.W.3d 144 (Tex. 2004)...................................................................19

*New Times, Inc. v. Wamstad*,
   106 S.W.3d 916 (Tex. App.—Dallas 2003, pet. denied).........................21

*New York Times, Co. v. Sullivan*,
   376 U.S. 254 (1964)...........................................................................16, 17

*Opaitz v. Gannaway Web Holdings, LLC*,
   454 S.W.3d 61 (Tex. App.—Amarillo 2014, pet. denied)........................17

*Paredes v. City of Odessa*,
   128 F. Supp. 2d 1009 (W.D. Tex. 2000).............................................13, 14

*Parisi v. Sinclair*,
   845 F. Supp. 2d. 215 (D.D.C. 2012) ......................................................16

*Renegade Swish, L.L.C. v. Wright*,
   857 F.3d 692 (5th Cir. 2017) ...................................................................7

*Reynolds v. Strayhorn*,
   No. A-05-CA-638, 2005 WL 8155585 (W.D. Tex. Nov. 17, 2005)................7, 8, 9

*Robinson v. Radio One, Inc.*,
   695 F. Supp. 2d 425 (N.D. Tex. 2010) .....................................................5

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012).................................................................5, 20

*Shaunfield v. Experian Inf. Sols., Inc.*,
   991 F. Supp. 2d 786 (N.D. Tex. 2014) ............................................................19, 23

*Slagle v. Prickett*,
   345 S.W.3d 693 (Tex. App.—El Paso 2011, no pet.) .............................................14

*Tex. Medicine Res., LLP v. Molina Healthcare of Tex., Inc.*,
   356 F. Supp. 3d 612 (N.D. Tex. 2019) ....................................................................6

*Times–Mirror Co. v. Harden*,
   628 S.W.2d 859 (Tex. App.–Eastland 1982, writ ref'd n.r.e.)................................17

*Times Herald Printing Co. v. Bessent*,
   601 S.W.2d 487 (Tex. Civ. App.—Beaumont 1980, writ dism'd w.o.j.) ................17

*Turner v. KTRK Television, Inc.*,
   38 S.W.3d 103 (Tex. 2000)....................................................................................22

*Venable v. La. Worker's Comp. Corp.*,
   740 F.3d 937 (5th Cir. 2013) ..................................................................................7

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) ...............................................................................18

**Statutes**

28 U.S.C. § 1331.....................................................................................................6, 7

28 U.S.C. § 1367................................................................................................6, 7, 11

42 U.S.C. § 1981...................................................................................................6, 10

42 U.S.C. § 1981a.................................................................................................2, 4, 6

42 U.S.C. § 1983..............................................................................................2, 4, 6, 8

42 U.S.C. § 2000d............................................................................................. *passim*

Tex. Civ. Prac. & Rem. Code § 16.002(a) .................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...............................................................................................4

Fed. R. Civ. P. 12(b)(6)......................................................................................5, 13, 16

## INTRODUCTION

Pennie's defamation claims against the News Defendants are untimely, implausible, and have no place in federal court.  The Court lacks subject matter jurisdiction to hear the claims because they present no federal question, and arise out of a different case and controversy than Pennie's civil rights claims against the City of Dallas.  The Complaint also fails to state a viable federal claim against any governmental actor at all, removing any basis for supplemental jurisdiction over Pennie's defamation claims.  Jurisdiction notwithstanding, Pennie's claims are also both time-barred and implausible on their face.  The one-year statute of limitations lapsed during Pennie's inexplicable months-long delay between filing and service of the Complaint.  And Pennie, a public official required to allege actual malice, fails to plausibly state that element of his defamation claims against the News Defendants.

Any of these independent grounds suffices for  dismissal of Pennie's claims against the News Defendants.  The Court should expeditiously do so.

## BACKGROUND

Pennie filed his Complaint on August 14, 2019.  *See* [Dkt. 1].  He thereafter delayed in requesting summons from the Clerk until October 28, 2019.  *See* [Dkt. 5].  Pennie failed to effect service upon TDMN until November 5, 2019,  and upon Ms. Martin until November 20, 2019.[1] As set forth in his Motion for Extension, "[t]he reason for" Pennie's delay between filing and taking any action to complete service "[was] that Mr. Pennie has been deciding whether to proceed with this case."  [Dkt. 9].

---

[1] As of the filing of the News Defendants' Motion, Pennie has not filed returns of service of the summons on the News Defendants.  However, counsel represents to the Court that such returns will show that the News was served Nov. 5 and Ms. Martin on Nov. 20.

As to its substance, the Complaint broadly alleges two categories of claims: (1) deprivation of federal rights by the City of Dallas and its former Mayor, Mike Rawlings[2] (the "Federal Claims"), *see* [Dkt.1 ¶¶ 70–113]; and (2) unrelated acts of libel allegedly committed by the remaining defendants, including the News Defendants (the "Defamation Claims"). *See id.* at ¶¶ 114–37.

## I.   Factual allegations pertaining to the Federal Claims.

Pennie "currently holds the rank of police sergeant with the Dallas Police Department." *Id.* at ¶ 5. While sparse on supporting facts, as to the Federal Claims, the Complaint asserts that "Defendant City of Dallas, represented by Defendant Rawlings as Mayor, publicly endorsed Defendant ATO," a non-profit corporation, "and encouraged citizens to support it in an effort to help Defendant ATO monopolize fundraising" for charitable causes benefitting Dallas police officers. *Id.* at ¶ 37. Per the Complaint, Defendants Rawlings and City of Dallas "made it clear that they were in the business of 'picking winners and losers' among charities in Dallas," and intended Pennie's foundation "to be a 'loser' in their plotted conspiracy to intentionally and maliciously take down Plaintiff." *Id.* at ¶ 67.

The scheme purportedly began in the wake of the July 7, 2016 attack in downtown Dallas that tragically took the lives of five Dallas police officers. *Id.* at ¶ 27. Pennie's foundation, DFOF, was allegedly "one of the three charitable organizations affiliated with the Dallas Police Department and Defendant City of Dallas collecting donations for the injured officers and fallen officers' families." *Id.* at ¶28. "The other organizations were Defendant ATO and the Dallas Foundation." *Id.* According to the complaint, Defendant City of Dallas negotiated an illegal "donations Management Agreement" with Defendant Mata, that "permitted Defendant City of

---

[2] Including one violation of 42 U.S.C. § 1981a, two violations of 42 U.S.C. § 1983 and one violation of the Civil Rights Act of 1964 (42 U.S.C. § 2000d). *See* Compl. at 20–25.

**BRIEF IN SUPPORT OF MOTION TO DISMISS–Page 2**

Dallas to intercept and deliver mail to Defendant ATO for the purpose of opening, reading and depositing any donations it found within the mail into its bank account, regardless of who the donations were for." *Id.* at ¶¶ 38–39. Defendant City of Dallas then allegedly "received several donations, checks and letters that were addressed to DFOF," but "intentionally rerouted them to Defendant ATO." *Id.* at ¶ 41. In response, DFOF filed a lawsuit in this Court, styled as *Dallas Fallen Officer Found. v. Frazier*, No. 4:18-cv-00481. *Id.* at ¶ 43.

## II.    Factual allegations pertaining to the Defamation Claims.

After DFOF filed the lawsuit, the Complaint alleges that "Defendant DMN requested that Plaintiff and DFOF's attorney come to its studio for an interview." *Id.* at ¶ 44. "During the interview," the Complaint contends that "something was wrong as the line of questioning reflected the [allegedly] false and defamatory statements posted on social media by Defendant DPA and others about Plaintiff." *Id.* at ¶ 46.

"Over the following weeks, Defendant Martin asked additional questions about Plaintiff, his family, his organization DFOF and other affiliations." *Id.* at ¶ 50. "During a phone interview," the Complaint contends that "Defendant Martin made it obvious" that she was writing a defamatory story about Pennie, based on information received "from Defendant Mayes of Defendant Mayes Media, who represents Defendants DPA and ATO about Plaintiff's operation." *Id.* at ¶ 54.

The News Defendants then allegedly published a defamatory article about Pennie on August 17, 2018 (the "Article"), entitled "DPD Sergeant Collected Millions for Fallen Officers. A Fraction Went to the Families." *Id.* at ¶ 56. As to what was purportedly false in the Article, the News Defendants allegedly stated "that Plaintiff and [a] telemarketing company had a special relationship that included 'kickbacks' and other deals." *Id.* at ¶ 58. The News Defendants also allegedly "wrote the article as if both the DFOF and the Texas Fallen Officers Foundation

('TFOF') were involved in fundraising for the July 7, 2016 tragedy."  *Id.* at ¶60.  The Complaint then goes on to list a series of statements from the Article relating to the percentage of donations that actually made it to officers' families.  *See id.* at ¶ 63.  The Complaint itself contends that "Following the 2016 tragedy, Plaintiff DFOF . . . raised monies totaling $1.3 million for philanthropic purposes of which more than $580,00 was donated to families of fallen and injured officers." *Id.* at ¶ 29.

## III.  Pennie's causes of action.

Based on the above allegations, the Complaint asserts the following causes of action:

| Defendants City of Dallas and Rawlings | All Defendants (except City of Dallas) |
| --- | --- |
| Violations of 42 U.S.C. § 1981a—Intentional Discrimination in Employment.  *Id.* at 20. | General Defamation.  *Id.* at 25–26. |
| Violations of 42 U.S.C. § 1983—Retaliation in Violation of the First Amendment (Free Speech).  *Id.* at 20–22. | Defamation by Implication.  *Id.* at 26–27. |
| Violations of 42 U.S.C. § 1983—Racial Discrimination in Violation of the Equal Protection Clause.  *Id.* at 23–25. | Defamation *Per Se*.  *Id.* at 28. |
| Violations of the Civil Rights Act of 1964 (42 U.S.C. § 2000d.  *Id.* at 25. | |

Pennie seeks $290 million in damages.  *Id.* at 29.

## STANDARD OF REVIEW

"Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quotations omitted).  "The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction."  *Id.*  "Accordingly, the

*plaintiff* constantly bears the burden of proof that jurisdiction does in fact exist." *Andrade v. Teichroeb*, 341 F. Supp. 3d 681, 694 (N.D. Tex. 2018) (emphasis added).

Dismissal under Rule 12(b)(6) is appropriate when the complaint fails to allege "enough *facts* to state a claim to relief that is plausible on its face" and fails to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *Nationwide v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007); *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 426 (N.D. Tex. 2010).

Under both Rule 12(b)(6) and Rule 12(b)(1), courts "take the well-pleaded factual allegations in the complaint as true," but "do not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Courts accordingly follow a two-step approach in evaluating motions to dismiss: "Step one: isolate and ignore statements in the complaint that simply offer legal labels and concussions or merely rehash cause-of-action elements . . . Step two: take the complaint's well-plead (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if the plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

## ARGUMENT

The Complaint here suffers from three fatal flaws. First, the well-pleaded facts do not support federal jurisdiction over the Defamation Claims. Second, Pennie inexcusably delayed in serving the Complaint on the News Defendants until months after the limitations period expired, which mandates dismissal. Third, the Complaint's non-conclusory factual allegations reveal nothing more than accurate reporting, without malice, upon matters of public concern. Each of these self-sufficient grounds for dismissal are examined further in order below.

## I.     The Court lacks subject matter jurisdiction over Pennie's claims against the News Defendants.

The Complaint asserts 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367(a) (supplemental) as bases for federal jurisdiction.  *See* [Dkt. 1 ¶¶ 1–2].  Neither supports jurisdiction over Pennie's claims against the News Defendants.  First, no federal question involving the News Defendants appears in the well-pleaded facts of the Complaint, which asserts only state law defamation claims against those parties.  Second, Pennie's private defamation claims against the News Defendants arise out of an entirely different controversy than his assorted constitutional and civil rights claims against the City of Dallas and its former mayor.  Pennie's attempt to shoehorn a private defamation case between Texas citizens into federal court accordingly fails.

### A.     The Complaint presents no federal question to support original jurisdiction over Pennie's claims against the News Defendants.

Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  *Tex. Medicine Res., LLP v. Molina Healthcare of Tex., Inc.*, 356 F. Supp. 3d 612, 615 (N.D. Tex. 2019).  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Id.*

The Complaint here asserts only state-law defamation claims against the News Defendants.  *See* [Dkt. 1 at 25–28].  By contrast, the Complaint alleges one violation of 42 U.S.C. § 1981a,[3] two violations of 42 U.S.C. § 1983 and one violation of the Civil Rights Act of 1964 (42 U.S.C. §

---

[3] While the Complaint styles Pennie's first cause of action as "Violations of 42 U.S.C. § 1981a," section 1981a "does not create a new substantive right or an independent cause of action; rather, it 'enhances the remedies otherwise available for intentional employment discrimination.'"  *Bennett v. Calabrian Chems. Corp.*, 324 F. Supp. 815, 839 (E.D. Tex. 2004) (quoting *Perry v. Dall. Indep. Sch. Dist.*, No. Civ. A. 3:96-CV-2855, 1998 WL 614668, at *1 n.1 (N.D. Tex. Sept. 2, 1998)).  The allegations in this section make clear the Complaint attempts to state a claim for intentional employment discrimination under 42 U.S.C. § 1981.  *See* [Dkt. 1 ¶¶ 70–74].

2000d) by Defendants Rawlings and the City of Dallas.  *See* [Dkt. 1 at 20–25].  The Complaint thus intentionally excludes the News Defendants from all claims "arising under the Constitution, laws, or treaties of the United States."  *See id.*; 18 U.S.C. § 1331.

Because the presence of a federal question "must be determined from what necessarily appears in the plaintiff's statement of his own claim," *Renegade Swish, L.L.C. v. Wright*, 857 F.3d 692, 696 (5th Cir. 2017) (quotations omitted), and because "contentions of defamation, slander, and libel do not state federal claims," *Kallie v. Tex. Dept. of Family & Protective Servs.*, No. A-13-CV-740-SS, 2013 WL 12393921, at *2 (W.D. Tex. Oct. 4, 2013), the Complaint does not support original federal question jurisdiction as to Pennie's claims against the News Defendants. *See id.*  Pennie must therefore establish supplemental jurisdiction to keep the Defamation Claims in federal court—something he cannot do.

### B.   Pennie's claims against the News Defendants arise out of a different case and controversy than the Federal Claims.

Federal district courts maintain "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367.  "A claim forms part of the same case or controversy if the claim is so related to the original claims that it derives from a common nucleus of operative fact."  *Venable v. La. Worker's Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013) (quotations and alterations omitted).

Pennie's claims of discrimination by state actors arise out of a wholly different set of operative facts than his libel claims against the News Defendants.  "Where a federal court finds that the federal and state claims do not derive from a common nucleus of operative fact, the court should decline to exercise jurisdiction."  *Reynolds v. Strayhorn*, No. A-05-CA-638, 2005 WL

8155585, at *3 (W.D. Tex. Nov. 17, 2005), *adopted*, Order on Rep. & Rec., *Reynolds v. Strayhorn*, No. A-05-CA-638 (W.D. Tex. Dec. 27, 2005), ECF No. 75.

The Western District applied this rule, and declined supplemental jurisdiction over similarly bifurcated claims in *Reynolds v. Strayhorn*.  Like Pennie, the plaintiff in *Reynolds* asserted defamation claims against TDMN and one of its reporters after "the *Dallas Morning News* published an article" that contained allegedly defamatory statements.  *Id.* at *2.  Also like Pennie, the plaintiff asserted various causes of action against government officials involved in the underlying story for violation of his civil rights, including under 42 U.S.C. § 1983.  *See id.* Declining to exercise supplemental jurisdiction over the defamation claims, the court observed that:

> The facts relevant to showing if the News Defendants defamed [the plaintiff]'s character are whether: (1) the News Defendants published a statement; (2) if that statement defamed [the plaintiff]; (3) if the News Defendants acted with actual malice or negligence regarding the truth of the published statements; (4) what actions the reporter took in investigating and writing this article; (5) whether the contents of the article were true at the time it was reported; and (6) whether any of those acts can be imputed to the newspaper.

*Id.* at *3.  "These facts," according the court, were "unrelated to the federal claims [the plaintiff] is making against the other Defendants."  *Id.*  The claims accordingly lacked "a common nucleus of operative fact," and the court granted TDMN's 12(b)(1) motion to dismiss.  *Id.*

The claims asserted in *Strayhorn* are materially indistinguishable from those presented here.  The plaintiff asserts constitutional and civil rights claims against government officials, and defamation claims against TDMN and its reporters based on their coverage of the underlying events.  *See id.*; pp. 1–4, *supra*.  As in *Strayhorn*, however, the mere act of reporting on related events does not bring defamation claims within the same case and controversy as the civil rights claims—the defamation inquiry turns on distinct issues such as publication, malice, journalistic

investigation, substantial truth, and vicarious liability. *See id.* The facts relevant to these issues are wholly "unrelated" to those needed to prove a civil rights violation by the government. *See id.*

The Southern District reached the same conclusion when it declined supplemental jurisdiction over libel claims against media defendants in *Comb v. Benji's Special Educ. Acad.*, No. H-10-3498, 2011 WL 4074525, at *11 (S.D. Tex. Sept. 13, 2011). The court specifically rejected the Plaintiff's contention that "because the two events [the publication and the government action] took place within a few days of one another, an inference of their relatedness is appropriate." *Id.* The court further found that the plaintiffs' conspiracy theory was "unsupported by any factual allegations." *Id.* This led to the conclusion that "Plaintiff's libel claim against the Media Defendants is discrete and separate from their federal claims against the Original Defendants." *Id.*

The Eastern District likewise dismissed state law claims against media defendants in *Akins v. Liberty City*, recognizing it was "unlikely that [the plaintiff] would succeed in establishing that his claims against Community Publishers (which involve the alleged publication of information about Akins's residence and character 'are so related' to the claims against the Liberty County Defendants (which center around Akins's treatment while incarcerated) that 'they form part of the same case or controversy.'" No. 1:10-CV-328, 2010 WL 11552952, at *4 n.2 (E.D. Tex. Dec. 13, 2010) (quoting 28 U.S.C. § 1367).

Like the plaintiffs in the above cases, Pennie has failed to establish federal jurisdiction. His attempt to inject libel claims against the media into a civil rights lawsuit against the government amalgamates two distinct lawsuits that will require different proof, and raise disparate issues. *See id.*; *Comb*, 2011 WL 4074525, at *11; *Reynolds*, 2005 WL 8155585, at *3; *see also Barnes v. Borough of Pottstown*, No. Civ. A. 93-1498, 1993 WL 239314, at *1 (E.D. Pa. June 30,

1993).  The News Defendants therefore respectfully submit the Court should follow the sound

precedent of its sister districts, and decline supplemental jurisdiction.

> ### C.  The Complaint fails to state a viable federal claim, removing any basis for supplemental jurisdiction over Pennie's claims against the News Defendants.

Putting aside the severability of the Defamation and Federal Claims, the Complaint fails to

plausibly support the Federal Claims, without which, there is no basis for the Court to entertain

supplemental jurisdiction at all.  "A federal court has broad discretion in deciding whether to

exercise supplemental jurisdiction over state law claims after all federal claims have been

dismissed."  *Epie v. Bd. of Pardons & Paroles*, No. 3:8-CV-1258-D, 2009 WL 2474050, at *2

(N.D. Tex. Aug. 12, 2009) (citing 28 U.S.C. § 1367(c)(3)).  "Among the factors to be considered

in exercising this discretion are judicial economy, convenience, fairness, federalism, and comity."

*Id.*  "When all federal claims are dismissed prior to trial, these factors weigh heavily in favor of

declining to exercise jurisdiction."  *Id.* (declining jurisdiction over remaining state law claims,

including defamation).  Indeed, the Fifth Circuit's "general rule is to dismiss state claims when the

federal claims to which they are pendent are dismissed."  *Enochs v. Lampasas Cty.*, 641 F.3d 155,

161 (5th Cir. 2011) (quotations omitted).

Here, Pennie must plead specific elements for each of his Federal Claims: employment

discrimination,[4] violation of the First Amendment,[5] denial of Equal Protection[6], and violation of

---

[4] "The elements of a claim under § 1981 are: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute," here, "an adverse employment action."  *Hanks v. Shinseki*, No. 3:08-CV-1594-G, 2009 WL 2002917, at *4 (N.D. Tex. July 9, 2009) (quotations omitted).

[5] "To establish a retaliation claim, plaintiffs must prove the following elements: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct.  *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quotations omitted).

[6] "Plaintiffs must demonstrate that they have been treated differently due to their race; if so, the different treatment will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest . . . A plaintiff must also allege that the unequal treatment stemmed from a discriminatory intent."  *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 228 (5th Cir. 2008).

Title VI.[7]  While not dispositive, it is telling that the Complaint only references Defendant

Rawlings only some ten times in its fifty paragraphs of purported factual allegations, and

Defendant City of Dallas only about thirteen times.[8]  *See* [Dkt. 1 ¶¶ 20–69].  Suffice it to say that

these sparse allegations come nowhere near satisfying the elements of Pennie's Federal Claims.

As things stand, the sum of Pennie's claims against Rawlings and the City of Dallas are

that those Defendants "encouraged citizens to support" a rival charitable organization, "in an effort

to help Defendant ATO monopolize fundraising" at the expense of Pennie's foundation.  *Id.* at ¶

37.  To the extent the Complaint contains non-conclusory allegations to support this theory, it still

fails to substantiate numerous elements of Pennie's civil rights claims.  For example there are:

- No allegations of adverse employment action based on race;

- No allegations of protected speech or retaliation thereto; and

- No allegations of race-based discrimination among similarly situated individuals.

Should the Court dismiss the Federal Claims based on these or other deficiencies, the Court should

also decline to exercise supplemental jurisdiction over the Defamation Claims in accordance with

Fifth Circuit standards.  *See Epie*, 2009 WL 2474050, at *2.

## II.    Pennie's Defamation Claims against the News Defendants are barred by the statute of limitations.

Assuming jurisdiction does exist, Pennie's failure to serve the News Defendants within the

limitations period nonetheless renders his Defamation Claims against them time-barred as a matter

of law.  "In the context of the statute of limitations, a court may properly dismiss an action if the

---

[7] Title VI prohibits discrimination "on the ground of race, color, or national origin," by "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  This language "permits suits only against public or private entities receiving [federal] funds and not against individuals." *Muthukumar v. Kiel*, 478 F. App'x 156, 159 (5th Cir. 2012).

[8] In this way, it is also apparent that the Defamation Claims substantially predominate over the Federal Claims.  This too warrants dismissal of the Defamation Claims, pursuant to 28 U.S.C. § 1367(c)(2).  *See Brackens v. City of Ennis*, No. Civ.A.3:97-CV-2502-H, 1998 WL 101938, at *2–3 (N.D. Tex. Mar. 2, 1998).

face of the pleadings indicates that the applicable statute of limitations bars the plaintiff's claim." *Nationwide Bi-Weekly Admin. v. Belo Corp.*, No. 3:06-CV-0600-N, 2006 WL 8436934, at *1 (N.D. Tex. Oct. 16, 2006), *aff'd* 512 F.3d 137 (5th Cir. 2007). "When interpreting state law, federal courts apply the state law's statute of limitations and relation-back doctrine." *Garza v. Citizens State Bank*, No. 6:08-CV-008-C, 2008 WL 11347435, at *3 n.4 (N.D. Tex. Oct. 2, 2008); *see also Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 448 (5th Cir. 1985).

In this case, the Complaint alleges that Texas residents published defamatory statements in a Texas newspaper about another Texas resident. *See* [Dkt. 1 ¶¶ 5–8, 55–56]. There can accordingly be no dispute that Texas law applies. *See, e.g., Levine v. CMP Publ'ns, Inc.*, 739 F.2d 660, 667 (5th Cir. 1984); *Chevalier v. Animal Rehab. Center, Inc.*, 839 F. Supp. 1224, 1229 (N.D. Tex. 1993). "Under Texas law, the statute of limitations for a libel action is one year," and "[t]he limitations period begins to run upon publication of the defamatory material." *Nationwide*, 2006 WL 8436934, at *2 (citing Tex. Civ. Prac. & Rem. Code § 16.002(a)). "[T]he mere filing of a suit," however, "will not interrupt or toll the running of the limitations period if the plaintiff does not exercise due diligence in procuring the issuance of service and citation upon the defendants." *Id.*; *see also Harper v. Kroger Tex., L.P.*, No. 4:17-cv-00195-O, 2017 WL 2991472, at *1 (N.D. Tex. July 14, 2017).

This Court and others in Texas have repeatedly recognized that an unjustified delay of as little as two months in obtaining service warrants dismissal. In *Harper*, for example, the Court dismissed the plaintiff's claims after observing that she "filed her suit within the limitations period but did not effect service until about two months after the limitations period had expired." *Harper*, 2017 WL 2991472, at *1. Similarly in *Garcia v. Simeus Foods Int'l, Inc.*, the Court concluded

that "while Plaintiff's Original Petition was filed within the limitations period, Defendant was not served until two months after the limitations period had expired," which warranted summary judgment "[g]iven Plaintiff's failure to meet his burden to explain the delay in service." No. 3:08-cv-01137-M, 2009 WL 2448437, at *1 (N.D. Tex. Aug. 7, 2009). And in *Paredes v. City of Odessa*, the Western District rejected the argument that delay was excused "because [the defendant] was served less than three months after the expiration of the limitations period," noting in particular that, "as in all aspects of the statute of limitations, ***any delay*** after the expiration of the limitations period is significant, whether one day or three months." 128 F. Supp. 2d 1009, 1020 (W.D. Tex. 2000) (emphasis added); *see also Barlow v. Wal-Mart Stores, Inc.*, 215 F. App'x 317, 318 (5th Cir. 2006) (affirming summary judgment based on findings "that the plaintiff: (1) filed just before the limitations period expired, (2) did nothing for one month after filing suit, (3) waited an additional month after requesting and receiving summons from the clerk to request an extension, which was granted, and (4) waited two weeks after the extension deadline to finally serve the defendants").[9]

Here, as in the foregoing cases, there was an unjustified delay between filing and service, which occurred well after the limitations period expired. The Complaint alleges that the News Defendants published "[t]he false, misleading and defamatory article" on "August 17, 2018." Compl. at ¶ 56. The one-year statute of limitations accordingly lapsed on August 17, 2019. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). While Pennie filed the Complaint just before that deadline, on August 14, 2019, *see* [Dkt. 1 at 1], he did not serve TDMN until nearly three months later, on November 5, 2019, or Ms. Martin until over three months later, on November 20, 2019.

---

[9] While many relevant examples such as *Garcia*, *Paredes*, and *Barlow* were decided on summary judgment, limitations is properly analyzed here as a matter of law on Rule 12(b)(6) motion. *See Harper*, 2017 WL 2991472, at *1; *Nationwide*, 512 F.3d at 147. Moreover, documents referenced in the Complaint and judicially noticeable materials, such as filings with the Court, are properly considered. *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008).

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS**</u>–Page 13

Indeed, Pennie did not even request citations from the Clerk until over two months after limitations expired. *See* [Dkt. 5]. Absent compelling justification, this delay warrants dismissal of Plaintiff's claims, like the delays in *Harper*, 2017 WL 2991472, at *1, *Garcia*, 2009 WL 2448437, at *1, and *Paredes*, 128 F. Supp. 2d at 1020.

To that point, Pennie's filings with the Court preclude any finding of diligence that could excuse his delay. "[W]hen a defendant complains of lack of due diligence in service of process, the plaintiff must explain what steps he took to obtain service, not explain why he did nothing." *Slagle v. Prickett*, 345 S.W.3d 693, 698 (Tex. App.—El Paso 2011, no pet.); *Farmers Tex. Cty. Mut. Ins. Co. v. McAbee*, No. 05-18-00735-CV, 2019 WL 1468037, at *2 (Tex. App.—Dallas Apr. 3, 2019, no pet. h.). In his Motion for Extension of Time to Serve Defendants, Plaintiff revealed that "the reason" he waited over two months to obtain citations, and three months to effect service, was that he had "been deciding whether to proceed with this case." *Id.* In short, he had been mulling whether or not to pursue his claims. *See id.* This is not diligence.

*Broom v. MacMaster* is instructive. 992 S.W.2d 659, 665 (Tex. App.—Dallas 1999, no pet.). In *Broom*, the plaintiff "did nothing to attempt service . . . for over three months after suit was filed." *Id.* at 664. In an attempt to excuse this delay, the plaintiff's attorney stated "that he 'withheld' issuance of citation . . . . because 'there was still a question in his mind' about whether [the defendant] was an appropriate party,'" among other practical considerations. *Id.* at 665. "What [the plaintiff's] attorney [did] not acknowledge," however, was "that he made the decision to make [the defendant] a party to the suit when he filed [the] petition." *Id.* "Having made that decision," the court held that "it was incumbent upon [the plaintiff] to diligently attempt to serve the [defendant] to prevent her claims from being barred by the statute of limitations." *Id.* While

perhaps "tactically understandable," the plaintiff's failure to so effect service "established [her] lack of diligence as a matter of law." *Id.*

Like the plaintiff in *Broom*, "it was incumbent upon" Pennie here to diligently effect service upon the defendants named in his Complaint. *Id.* The three months he admittedly spent wrestling with whether to proceed does not constitute diligence as a matter of law. *Id.* To the contrary, his conscious evaluation of his claims "support[s] the . . . argument that diligence was not used." *Id.* As the court noted in *Broom*, a plaintiff "may have good reasons for not wanting to seek immediate service on a defendant," but "those reasons do not negate the requirement that diligence be used in attempting service once the limitations period has passed." *Id.* Simply put, "[i]f the limitations period has passed, a plaintiff must use due diligence to procure service ***regardless of any reasons he may have not to want to do so***." *Id.* (emphasis added). "To hold otherwise would ignore the goal of statutes of limitations . . . and would eviscerate the long established due diligence requirement." *Id.*

Therefore, as in *Broom*, Pennie cannot demonstrate diligence to save his Defamation Claims from the limitations bar. *See id.; see also Barlow*, 215 F. App'x at 318 (rejecting explanation "that 'family reasons' had prevented [plaintiff] from paying fees of thirty-three dollars necessary to obtain a process server"); *Montes v. Villarreal*, 281 S.W.3d 552, 558 (Tex. App.—El Paso 2008, pet. denied) (no diligence where attorney delayed service "because he did not want his client to incur liability for attorney's fees and costs"); *Herman v. Quorum*, No. 05-01-01607-CV, 2002 WL 1895511, at *3 (Tex. App.—Dallas Aug. 19, 2002, no pet.) (withholding service "to wait and see how things would work out," and hesitation "because he knew that once he instigated service of process, the defendants would begin to incur costs associated with the litigation," is not

diligence).  The Defamation Claims against the News Defendants should  therefore be dismissed as untimely.

**III.     Plaintiff fails to state a plausible claim for relief against the News Defendants.**

Finally, the Defamation Claims against the News Defendants fail as a matter of law because the Complaint does not plausibly allege that they published false statements about Pennie with actual malice.

**A.     Legal standard.**

Federal courts must "expeditiously weed out unmeritorious defamation suits" that implicate First Amendment protections of free speech and press.  *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.).  Rule 12(b)(6) is an important procedural safeguard in actual malice cases because it "provides assurance to those exercising First Amendment rights that doing so will not needlessly become prohibitively expensive."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) (granting dismissal where plaintiff failed to adequately plead actual malice), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

As a plaintiff complaining about news coverage related to his public fundraising and standing as a Dallas police sergeant, Pennie is a public figure required to plead and prove with specific facts that the News Defendants acted with actual malice when they allegedly defamed him.  *See New York Times, Co. v. Sullivan*, 376 U.S. 254 (1964).  Actual malice requires proof that the alleged defamation was made with knowledge that it was false or with reckless disregard of whether it was false or not.  *Id.*  To meet this threshold, a plaintiff must produce more than bare or conclusory allegations of knowing falsehood or reckless disregard of the truth in order to raise his right to relief above a speculative level.  *See Parisi v. Sinclair*, 845 F. Supp. 2d. 215, 218-19 (D.D.C. 2012).

In making this assessment, a court may consider the complaint as well as documents attached or incorporated into the complaint by reference such as the allegedly defamatory news article. *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013); *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 775 n.6 (N.D. Tex. 2007) (considering publications attached as exhibits to defendant's 12(b)(6) motion because they served as the basis for plaintiff's defamation claim). Upon review of these sources, it is clear that Pennie has not met his "heavy burden" of actual malice as required by the First Amendment. *See Sullivan*, 376 U.S. at 272; *Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016).

### B.  Pennie is a public official required to prove actual malice.

Under the rule of *New York Times v. Sullivan,* police officers and other law enforcement officials are considered public officials for purposes of actual malice. *See Opaitz v. Gannaway Web Holdings, LLC*, 454 S.W.3d 61, 66 (Tex. App.—Amarillo 2014, pet. denied) (citing *Pardo v. Simons,* 148 S.W.3d 181, 189 (Tex. App.–Waco 2004, no pet.) (police officer)); *Hailey v. KTBS, Inc.,* 935 S.W.2d 857, 859–61 (Tex. App.–Texarkana 1996, no writ) (deputy sheriff); *Times–Mirror Co. v. Harden,* 628 S.W.2d 859, 860 (Tex. App.–Eastland 1982, writ ref'd n.r.e.) (Texas DPS undercover narcotics agent); *Times Herald Printing Co. v. Bessent,* 601 S.W.2d 487, 489 (Tex. Civ. App.—Beaumont 1980, writ dism'd w.o.j.) (Texas DPS officer); *McKinley v. Baden,* 777 F.2d 1017, 1021 (5th Cir. 1985) (police officer); *Morris v. Dallas Morning News, Inc.*, 934 S.W.2d 410, 415 (Tex. App.—Waco 1996, writ den.) (plaintiff police officer conceded status as public official).

"The public perceives a police officer as an authority figure entrusted in upholding the law and possesses a legitimate interest in information related to his ability to follow the law and perform his duty to protect the public." *Opaitz,* 454 S.W.3d. at 66 (citing *Morales v. Ellen,* 840 S.W.2d 519, 525 (Tex. App.—El Paso 1992, writ den.)).

The Texas Supreme Court recently confirmed that "official conduct" under the *New York Times* rule is broadly construed to include not only the official's performance of official duties but also the official's fitness for public office. *Greer v. Abraham*, 489 S.W.3d 440, 445 (Tex. 2016) (citing *Foster v. Laredo Newspapers, Inc*., 541 S.W.2d 809, 814 & n.7 (Tex. 1976)). The court noted its own characterization of "the official-conduct concept as very broad." *Id.* News reporting that touches on an official's fitness for public office is indicative of public official status. *Garrison v. Louisiana*, 379 U.S. 64, 76–77 (1964). Moreover, personal misconduct is relevant to fitness for public office of those charged with enforcing the law. *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990).

Here, the News Defendants' Article "*DPD Sergeant Collected Millions for Fallen Officers. A Fraction Went to the Families*" reported not only on Pennie's actions in operating and public fundraising for charitable foundations for fallen police officers, but also provided the context of Pennie's broader history with the Dallas Police Department, how he "travels the country" as a public speaker engaged by police groups, conservative clubs and youth organizations, and his status as a political activist interviewed on various national media platforms. *See, e.g.,* [Dkt. 1 ¶¶ 48–49, 55–56, 63]. Indeed, the Complaint itself touts that Plaintiff is "nationally-recognized as a law enforcement advocate" and "national media contributor on issues relating to public safety." *Id.* at ¶¶ 5, 23. In sum, the alleged defamation relates to Pennie's official capacity as a police officer, and furthermore, touches on Pennie's fitness for this role. As a result, Pennie is a public official required to establish actual malice in order to maintain this defamation action against the News Defendants.

## C.    Pennie fails to plausibly allege actual malice.

To adequately plead actual malice, Pennie was "required to allege specific facts that plausibly evidence actual malice in a clear and convincing manner." *Hughes v. Twenty-First*

*Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (citations omitted); *Shaunfield v. Experian Inf. Sols., Inc.*, 991 F. Supp. 2d 786, 807 n.22 (N.D. Tex. 2014).

In other words, Pennie had to plead facts showing that the News Defendants published the alleged defamation with "knowledge of, or reckless disregard for, the falsity of a statement." *Greer*, 489 S.W.3d at 444. The "reckless disregard" component of actual malice means that the media defendant actually entertained "serious doubt about the truth of the article at the time it was published." *Cox Tex. Newspapers, LP v. Penick*, 219 S.W.3d 425, 437 (Tex. App.—Austin 2007, pet. denied). This is a subjective standard that focuses on the state of mind of the defendant at the time the statement was published. *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 162 (Tex. 2004). Further, "actual malice" does not mean bad motive or ill will. *Greer*, 489 S.W.3d at 444. The inquiry focuses instead on the defendant's attitude toward the truth, not his attitude toward the plaintiff. *Id.* at 444.

Here, the Complaint does not plausibly allege that the News Defendants knew that statements in the Article concerning him were false or that they entertained serious doubts as to the truth. Instead, Pennie repeatedly relies on conclusory assertions and bare allegations that:

- the News Defendants "publish[ed] statements about Plaintiff which they knew or should have known to be false and misleading." [Dkt. 1 ¶¶ 115, 122, 131].

- "Defendants knew or had reason to know that their publications were false and misleading." *Id.* at ¶ 119.

- Defendants "intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice." *Id.* at ¶ 128.

- "Defendants knew or should have known that their publications were false and misleading." *Id.* at ¶ 136.[10]

---

[10] The assertion that the News Defendants "should have known" of alleged falsity fails on its face to state actual malice as the standard requires knowing falsehood or an actual high degree of awareness of probable falsity." *See, e.g.,*

**BRIEF IN SUPPORT OF MOTION TO DISMISS–Page 19**

Use of "actual-malice buzzwords," such as "'knowledge that its statements were 'false' or had 'serious doubts about their truth and a reckless disregard for whether they were false,'" do not suffice. *Schatz*, 669 F.3d at 56. "[T]hese are merely legal conclusions, which must be backed by well-pled facts." *Id.*

The few specifics that the Complaint offers regarding what the News Defendants allegedly knew or believed at the time of publication, fail to establish actual malice as a matter of law. For example, Pennie contends that the News Defendants published false, defamatory statements despite "evidence" he allegedly provided that contradicted the assertions. [Dkt. 1 ¶¶ 46, 59]. For one, the Complaint never identifies what evidence was offered or explains how it exculpated Pennie. *See id.* More importantly, the First Amendment protects the right of journalists to publish information contrary to denials or explanations of events by a public official. *See Huckabee v. Time Waner Ent'mt Co.*, 19 S.W.3d 413, 427 (Tex. 2000). "The mere fact that a defamation defendant knows that the public figure has denied harmful allegations or offered an alternative explanation of events is not evidence" of actual malice. *Id.* Furthermore, such conclusory assertions cannot establish actual malice, because TDMN included his denials and explanations in the Article. *See, e.g.,* Ex. A, Article, App. at 9 ("Pennie defended his salary [of $43,300 from the Dallas Fallen Officer Foundation], saying it allows him to dedicate more than 20 hours per week to his charity work."); *Id.* ("Pennie also defended his spending on fundraising, saying his nonprofits are only a few years old, so telemarketing is a cost-effective way to bring in money that otherwise wouldn't be raised."); *Id.*, App. at 11 (Plaintiff "accidentally shot himself … Pennie said.").

---

*Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). *Twombly* requires a federal courts to dismiss a defamation action where the allegations in the complaint are merely conclusory. *Adelson v. Harris,* 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013).

The Complaint further alleges that defendant Martin, a reporter for TDMN and an author of the Article, declined Pennie's invitation to attend an event conducted by the Dallas Fallen Officer's Foundation.  [Dkt. 1 ¶¶ 52–53].  However, this does not give rise to a plausible inference of actual malice.  The First Amendment protects a news organization's choice of which events to cover or materials to include in a report.  *See Huckabee*, 19 S.W.3d at 436.

Martin also allegedly received information from a representative of a competing foundation and Pennie claims he warned the reporter that this source had an "agenda to discredit and defame him." [Dkt. 1 ¶ 54].  Here again, however, the law is clear that even reliance on "a biased source" or "incomplete information" is not evidence of actual malice.  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003).  An allegation that a news reporter should not have believed a source's information about a plaintiff is no evidence of actual malice even when coupled with a showing that a defendant "didn't like" or "had it out" for the plaintiff.  *Freedom Newspapers of Tex v. Cantu,* 168 S.W.3d 847, 857–58 (Tex. 2005).  A "reporter may rely on statements by a single source, even though they reflect only one side of the story, without manifesting a reckless disregard for the truth."  *New Times, Inc. v. Wamstad*, 106 S.W.3d 916, 928 (Tex. App.—Dallas 2003, pet. denied).  Simply put, "a publication can portray a person in a negative manner without liability because there is no legal obligation to present a 'balanced view.'"  *Dolcefino v. Turner*, 987 S.W.2d 100, 119–21 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom.*, *Turner v. KTRK Telev., Inc.*, 38 S.W.3d 103 (Tex. 2000).

The Complaint also contends that the News Defendants "wrote the article as if both the DFOF and … TFOF were involved" in common fundraising and that the Article "intentionally mixed DFOF's and TFOF's finances together to paint a skewed image of Plaintiff."  [Dkt. 1 ¶¶ 60–61]. This fails to plausibly establish actual malice because the Article clearly reports separate

facts and figures for each foundation controlled by Pennie.  *See, e.g. id.* at 31–32.  Further, even if the reporting was inaccurate, which TDMN strongly disputes, falsity alone does not give rise to an inference of actual malice.  *Huckabee*, 19 S.W.3d at 420 ("Rather, to establish actual malice, a plaintiff must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of whether it was true or not") (quotations omitted).

As to Pennie's claim for defamation by implication, [Dkt. 1 ¶¶ 121–29], the Complaint again relies on conclusory assertions, and makes no plausible showing of specific facts supporting the allegations.  The mere fact that the Article included certain information about Pennie, but excluded other items concerning him does not plausibly show actual malice.  *See Deripaska v. Associated Press,* 282 F. Supp. 3d 133, 143 (D.D.C. 2017), *appeal dismissed*, No. 17-7164, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017) (allegation that news media defendant intentionally omitted "crucial background" is not enough to make out a plausible case of actual malice.)

Rather, evidence of an omission or juxtaposition made with the intent of creating a false implication is required for actual malice.  *Huckabee*, 19 S.W.3d at 436 ("in the absence of evidence that the defendant selected the material to portray the judge's record falsely, the First Amendment protects the organization's choice of which material to include in its broadcast").  "For an omission to be evidence of actual malice . . . the plaintiff must prove that the publisher knew or strongly suspected that [the omission] could create a substantially false impression." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 121 (Tex. 2000).  The Complaint fails to plausibly plead facts showing that TDMN omitted or juxtaposed information in the Article for the purpose of creating a false impression.

Similarly, Pennie's claim that the article was the result of a coordinated effort among all defendants to discredit him as an African-American conservative, [Dkt. 1 at 23], a premise that

TDMN vigorously contests, does not establish actual malice. *Huckabee*, 19 S.W.3d at 425 (evidence of pressure to produce stories from a pre-conceived point of view fail to prove actual malice).

Finally, Pennie makes no showing at all that the numerous disclosed sources relied upon by the News Defendants in the Article were not credible or provided false information. Where a news organization relies on knowledgeable sources whose information is not inherently improbable there is no evidence of actual malice. *See Beck v. Lone Star Broad., Co.*, 970 S.W.2d 610, 617 (Tex. App.—Tyler 1998, pet. denied).

In sum, the Complaint fails to state a claim for defamation for lack of "specific facts that plausibly evidence actual malice in a clear and convincing manner." *Shaunfield*, 991 F. Supp. 2d at 807 n.22; *Arpaio v. Cottle*, No. 18-cv-2387, 2019 WL 3767104, at \*3–5 (D.D.C. Aug. 9, 2019).

<u>CONCLUSION</u>

Pennie's claims against the News Defendants are untimely, implausible, and filed in the wrong court. Whichever basis the Court chooses, dismissal is the proper result.